UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| Holly A. Floerke, | |
| Plaintiff, | Case No. 17-CV-567 |
| v. | DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| SSM Health Care Plan and Unum Life Insurance Company of America, | |
| Defendants. | |

---

## INTRODUCTION

Defendants Unum Life Insurance Company of America ("Unum") and SSM Health Care Plan ("SSM") respectfully submit this Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment.[1] Plaintiff argues that Unum's decision to discontinue benefits under the self-reported symptoms and mental illness limitations, which she concedes is governed by the abuse-of-discretion standard,[2] is arbitrary and capricious. In so arguing, however, Plaintiff expressly acknowledges the evidence supporting Unum's decision; namely, that her diagnoses of migraines and new daily persistent headaches were based on self-reported symptoms and that she was disabled due to comorbid conditions of depression and anxiety. Based on this evidence, Unum's benefits decision was reasonable and rationally supported by the administrative

---

[1] Defendants incorporate by reference herein their Memorandum of Law in support of Motion for Summary Judgment and accompanying submissions. [Docket Nos. 8-11].

[2] See Docket No. 18, p. 12 ("Unum's Policy language is sufficient to bestow deferential authority.").

1

record and therefore was neither arbitrary nor capricious. Further, Plaintiff sets forth no basis for SSM's liability for the discontinuance of benefits. Accordingly, both Unum and SSM are entitled to summary judgment.

## LEGAL ARGUMENT

### I. UNUM, NOT PLAINTIFF, IS ENTITLED TO SUMMARY JUDGMENT.

As communicated in its correspondence to Plaintiff, Unum discontinued Plaintiff's disability benefits under the self-reported symptoms limitation, which limits payment of benefits to 12 months, because her diagnoses of chronic migraines and new daily persistent headaches were not based on verifiable testing or objective findings. 000795; 003095. Further, Unum discontinued benefits because Plaintiff was disabled due to her comorbid mental illnesses of depression and anxiety, which are also subject to a 12-month limitation period. Because Unum's application of these policy limitations was reasonable and rationally supported by the record, its benefits decision must be upheld. Geiger v. Aetna Life Ins. Co., 845 F.3d 357, 362 (7th Cir. 2017) (an administrator's decision will be upheld "so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision").

### A. Unum's Discontinuance of Benefits Based on the Self-Reported Symptom Limitation was Reasonable and Supported by the Record.

The crux of Plaintiff's summary judgment motion is that Unum improperly applied the self-reported symptom limitation in contravention of Weitzenkamp v. Unum Life Ins. Co. of Am., 661 F.3d 323 (7th Cir. 2011), and its progeny. Plf. Br., Docket No.

18, p. 13. In actuality, Weitzenkamp supports Unum's application of the self-reported symptom limitation on this record.

As set forth in Defendants' principal memorandum in support of summary judgment, Weitzenkamp stands for the proposition that "the self-reported symptoms limitation applies to disabling illnesses or injuries that are *diagnosed* primarily based on self-reported symptoms rather than to all illnesses or injuries for which the *disabling symptoms* are self-reported." Id. at 330 (italicized emphasis in original; underlined emphasis added). Stated differently, "the application of the 'self-reported' limitation depends on the method of diagnosis of the sickness or injury that led to the disability[.]" Eisner v. Prudential Ins. Co. of Am., 2013 U.S. Dist. LEXIS 105995, *13-14 (N.D. Cal. July 25, 2013) (emphasis added).[3] Unlike the trigger-point test for diagnosing fibromyalgia utilized in Weitzenkamp, and the Dix-Hallpike maneuver used to diagnose vertigo in Cox v. Allin Corp. Plan, 70 F.Supp.3d 1040 (N.D. Cal. 2014), Plaintiff's diagnoses of migraines and new daily persistent headaches were undisputedly derived from the absence of verifiable diagnostic tests/methods or objective diagnostic findings. Accordingly, this is precisely the situation where the self-reported limitation continues to apply based on the holding in Weitzenkamp.

Importantly, Plaintiff's treating physician, Dr. Bain, expressly stated that:

> The diagnoses of chronic migraine and new persistent daily headache are primarily made by history and physical ruling

---

[3] Plaintiff cites to Eisner and related cases in her memorandum [Docket No. 18, p. 14] but fails to note this critical distinction between cases applying the self-reported limitation and those declining to apply it where the diagnosis of the disabling condition is the result of a clinical test or examination standardly accepted in medicine.

1635886.1

> out other conditions. Imaging procedures such as MRI and CT can rule out other types of headaches. The 2 types of headaches noted above are generally considered diagnoses of exclusion. She has had MRI, MRA of brain and CT scan of brain. No other causes of her headaches were identified."

003064-003065 (emphasis added). Dr. Bain further noted that his diagnosis of new persistent daily headaches was the result of Plaintiff's description of the frequency and duration of the pain combined with her condition being "not better accounted for by another ICHD-3 diagnosis." 003064. Thus, Dr. Bain confirmed that the "method of diagnosis" of Plaintiff's disabling headache conditions were based on the history of self-reported information provided by Plaintiff and the absence of objective findings of any other verifiable diagnosis.

Indeed, Plaintiff effectively concedes that every medical test, examination, and treatment intervention failed to reveal a diagnosis for her headache condition. See PFOF[4] 12-13 (anti-migraine medications were not successful in treating the headaches); PFOF 14 ("Neither the occipital nerve block nor a repeated procedure produced results"); PFOF 16 ("The Sumatriptan also did not help"); PFOF 18 ("Neither a CT scan nor an MRI of Floerke's brain explained her migraines and the steroid taper did not provide relief"); PFOF 19 ("Labs and workups were negative for mass, hydrocephalus, vasculitis and infection"); PFOF 24 ("Both Nale and Dr. Frucht, a neurologist, described a normal neurological examination"); PFOF 26 ("Botox treatment failed"); PFOF 27 ("Her ophthalmology exam and EEG were normal"); PFOF 41 ("Neither the punctures, injections nor blocks provided lasting relief"); PFOF 45 ("Dr. Saper, the Direct of the

---

[4]  "PFOF" refers to Plaintiff's Proposed Findings of Facts [Docket No. 17].

1635886.1

institute, noted as follows: "MRI of the c-spine without contrast showed no evidence of high grade spinal canal or foraminal narrowing in the cervical spine;" "MRI of the brain with and without contrast on 4/15/2014 was unremarkable, including views of the light trigemital nerve"); PFOF 50 ("Dr. Bain continued to treat Floerke, including with a series of Sphenopalatine Gnaglion blockades that did not relieve her headaches"); PFOF 54 ("Dr. Faull assessed only moderate disability due to pain and indicated as follows: 'On exam I cannot find a cervicogenic component as she really has only minimal tenderness in the left upper cervical region…"); PFOF 57 (Dr. Bain's opinion that Floerke "has not responded to medications"); PFOF 65 (Dr. Bain's report indicating that new daily persistent headache diagnosis based on Plaintiff's condition "not better accounted for by another ICHD-3 diagnosis"); PFOF 66 (Dr. Bain's statement that, "The diagnoses of chronic migraine and new persistent daily headache are primarily made by history and physical ruling out other conditions…She has had MRI, MRA of brain and CT scan of brain. No other causes of her headaches were identified.").[5]

Consistent with the foregoing, Unum's clinical consultants identified the failure of "extensive diagnostic studies," including neurodiagnostic studies, to support an

---

[5] While Plaintiff cites to references in her medical records to high pressure syndrome, a cervicogenic component to her headaches, and pressure of her spinal fluid, these conditions were never connected to the diagnoses and were later ruled out through examination and procedures. Compare PFOF 36-40, 49 with PFOF 54 ("Dr. Faull assessed only moderate disability due to pain and indicated as follows: 'On exam I cannot find a cervicogenic component as she really has only minimal tenderness in the left upper cervical region…"); 003065 (Dr. Bain indicating that "no other causes of her headaches were identified"); 000134 (MHNI note at time of discharge: "[n]o other markers are available that would indicate a secondary cause of headache at this time.").

5

1635886.1

institute, noted as follows: "MRI of the c-spine without contrast showed no evidence of high grade spinal canal or foraminal narrowing in the cervical spine;" "MRI of the brain with and without contrast on 4/15/2014 was unremarkable, including views of the light trigemital nerve"); PFOF 50 ("Dr. Bain continued to treat Floerke, including with a series of Sphenopalatine Gnaglion blockades that did not relieve her headaches"); PFOF 54 ("Dr. Faull assessed only moderate disability due to pain and indicated as follows: 'On exam I cannot find a cervicogenic component as she really has only minimal tenderness in the left upper cervical region…"); PFOF 57 (Dr. Bain's opinion that Floerke "has not responded to medications"); PFOF 65 (Dr. Bain's report indicating that new daily persistent headache diagnosis based on Plaintiff's condition "not better accounted for by another ICHD-3 diagnosis"); PFOF 66 (Dr. Bain's statement that, "The diagnoses of chronic migraine and new persistent daily headache are primarily made by history and physical ruling out other conditions…She has had MRI, MRA of brain and CT scan of brain. No other causes of her headaches were identified.").[5]

Consistent with the foregoing, Unum's clinical consultants identified the failure of "extensive diagnostic studies," including neurodiagnostic studies, to support an

---

[5] While Plaintiff cites to references in her medical records to high pressure syndrome, a cervicogenic component to her headaches, and pressure of her spinal fluid, these conditions were never connected to the diagnoses and were later ruled out through examination and procedures. Compare PFOF 36-40, 49 with PFOF 54 ("Dr. Faull assessed only moderate disability due to pain and indicated as follows: 'On exam I cannot find a cervicogenic component as she really has only minimal tenderness in the left upper cervical region…"); 003065 (Dr. Bain indicating that "no other causes of her headaches were identified"); 000134 (MHNI note at time of discharge: "[n]o other markers are available that would indicate a secondary cause of headache at this time.").

etiologically-based diagnosis. 000746 ("Following extensive diagnostic studies, consultations with exams by various providers, trials of multiple medications and procedures, no etiology of the chronic daily headaches compounded by chronic migraines has been determined and no significant response to any therapy has been evidenced."); 003083-003084 ("underwent an extensive work up for her chronic daily migraine headaches which included diagnostic studies and neurodiagnostic studies (lumbar puncture, CT scans, MRI's, and EEG), consults with specialists (Psychologist, Neurology Pain Management, Neurologist, Pain Specialist, Optometrist, Sleep Specialist) and inpatient hospitalization from her last day worked to date with <u>no identified etiology has been determined to explain her chronic daily headaches compounded by chronic migraines despite extensive evaluations and diagnostic studies and her treatment has been symptom driven</u>. <u>Neuro imaging and lab workup has been negative for concerning etiologies such as a brain mass, hydrocephalus, vasculitis, and infection</u>.").

On this record and based on <u>Weitzenkamp</u>, Unum's decision to discontinue benefits based on the self-reported symptom limitation was reasonable and does not constitute an abuse of discretion. Plaintiff cannot avoid that her ultimate diagnoses were based, at least "primarily," on her history of self-reporting and the absence (through a process of elimination) of any other objectively verifiable diagnosis. Consequently, summary judgment should be granted to Unum on this basis.

## B. Unum's Application of the Mental Illness Limitation is Reasonable and Rationally Supported.

Conspicuously absent from Plaintiff's brief is any reference to, much less argument regarding, the additional basis upon which Unum discontinued benefits—application of the mental illness limitation. The Policy unambiguously limits payment of benefits to twelve months for disabilities due to "mental illness," the policy definition of which includes depression, anxiety, and other adjustment orders and conditions. 000618; 000624.

As Plaintiff acknowledges, her treating physicians repeatedly identified comorbidities[6] of depression and anxiety that impaired her daily functioning and negatively impacted her treatment. See, e.g., Plf. Br., Docket No. 18, p. 3 (Drs. Nale and Bain "diagnosed chronic migraine without aura with comorbidities of depression and anxiety) (citing PFOF 22); p. 5 (Dr. Saper recognizing Plaintiff's "psychological comorbidities") (citing PFOF 47); p. 6 (Therapist Laubach confirming diagnoses of "major depressive disorder, moderate to serious with anxious features, persistent depressive disorder and added a diagnosis of PTSD related to Floerke's headaches and disability. He noted that depression intensified only after the headaches began in 2014."). Dr. Bain, who treated Plaintiff throughout the claim review process, on multiple occasions, identified her depression and anxiety as "significant" comorbid conditions

---

[6] By definition, "comorbid" means medical conditions that present simultaneously in a patient. See dictionary.com; see also Delprado v. Sedgwick Claims Mgmt. Servs., Inc., 2015 U.S. Dist. LEXIS 51263, *13 n.6 (N.D.N.Y. Apr. 17, 2016) ("Co-morbid is defined as existing simultaneously, usually independently, of another medical condition.") (citing Merriam-Webster Medline Plus Medical Dictionary).

1635886.1

causing functional impairment. 000342-000343; 000591. Similarly, Dr. Faull, a pain management specialist, identified her "coexisting anxiety and depression" as creating a "moderately severe level of functional impairment." 000713-000714.[7]

Moreover, the record reflects that Plaintiff's major depressive symptoms "intensified" after migraine onset and "made it more difficult to undergo the treatments for her chronic migraine disorder." 000644-000655; 000713-000714; 000139 ("[t]he patient endorsed current depressive symptoms related to head pain. She indicated that she had suicidal thoughts associated with head pain at the end of June 2014…The patient also acknowledged current anxious symptoms related to head pain as well as a history of panic."). Her post-traumatic stress disorder, which developed <u>after</u> onset of the migraine headaches, "increased her anxiety significantly." 000655. As such, Plaintiff's course of treatment for her disability involved therapeutic interventions by "mental health providers," therefore further implicating the mental illness limitation. 000624 (definition of "mental illness" as conditions "usually treated by a mental health provider or other qualified provider using psychotherapy…or other similar methods of treatment"); 000714 (Dr. Faull's recommendation that Plaintiff pursue "pain psychology for cognitive behavior therapy, improved coping skills…"); 000139 (after unsuccessful treatment at MHNI, Plaintiff planned to "secure a local psychiatrist and psychotherapist").

---

[7] Consistent with Plaintiff's treating physicians, Unum's clinical consultant identified "several co-morbid conditions" impacting Plaintiff's functioning, including major depressive disorder. 000745.

8

While Plaintiff attempts to avoid the clear application of the mental illness limitation by citing to the opinion of Dr. Steven G. Benish, the Social Security Administration's ("SSA") consultative examiner, this does not advance her position. In the Disability Determination Explanation, the SSA ultimately rejected Dr. Benish's opinion that Plaintiff's impairment was primarily medical rather than mental, concluding instead that Plaintiff "has marked limitation in daily activities and in concentration, persistence and pace <u>caused by her combination of mental impairments and by her intractable headaches</u>." 001441 (emphasis added). The SSA further noted that:

> The combined effect of the depression, anxiety and headache disorder is equal in severity to listing 12.04A1B13. The claimant has vegetative signs of depression, meeting the A criteria of that listing. Her ADLs are markedly limited as described in the PRT summary, and her concentration, persistence, and pace are markedly limited as well. These limitations are caused by the combined effects of her headaches and her mental impairments, and it is impossible to determine the impact of each impairment separately. The claimant is found to be disabled based on the combined effects of her physical and mental impairments.

001442. The SSA determined that Plaintiff's "Affective Disorders" [depression, anxiety-related disorders] were "primary" and "severe," with Migraine being "secondary" and "severe," and her Anxiety and Personality Disorders were also labeled as "severe." 001442.

Although not dispositive, the fact that the SSA's determination is consistent with Unum's application of the mental illness limitation supports the reasonableness of the benefits decision. Based on the evidence in the record, Unum's invocation of the

9

1635886.1

limitation period for mental illness was neither arbitrary nor capricious. Accordingly, this provides a rational basis upon which its benefit decision should be upheld.

## II. PLAINTIFF HAS PRESENTED NO BASIS FOR SSM LIABILITY.

Although Plaintiff named SSM as a defendant, it is apparent from her Motion for Summary Judgment that she has not identified a basis for holding SSM liable for the disputed benefits decision. Rather, she repeatedly acknowledges that the discontinuation of benefits was "Unum's Decision" made pursuant to the discretionary authority granted under the Policy. See, e.g., Docket No. 18, p. 13 and n.2 (referencing "Unum's Decision"), and p. 12 ("Unum's Policy language is sufficient to bestow deferential authority."). Thus, SSM should be granted summary judgment and dismissed from this action.

## CONCLUSION

Plaintiff's summary judgment motion only serves to confirm that Unum's decision to discontinue benefits based on the self-reported symptom and mental illness limitation was reasonable and supported, and therefore not arbitrary and capricious. Further, Plaintiff identifies no factual or legal basis for SSM's liability for the benefits decision. Accordingly, Defendants should be granted summary judgment and Plaintiff's cross-motion denied.

1635886.1

**MESSERLI | KRAMER**

Dated:  May 22, 2018					*s/Terrance J. Wagene*r
							Terrance J. Wagener
							100 South Fifth Street
							Suite 1400
							Minneapolis, MN  55402
							Telephone:  (612) 672-3600
							twagener@messerlikramer.com

							**ATTORNEYS FOR DEFENDANTS**

11

1635886.1