UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Holly A. Floerke,<br><br>                 Plaintiff,<br>v.<br><br>SSM Health Care Plan and Unum Life Insurance Company of North America,<br><br>                 Defendants. | Case No. 17-CV-567<br><br>**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Defendants Unum Life Insurance Company of America ("Unum") and SSM Health Care Plan ("SSM") respectfully submit this Reply Memorandum of Law in further support of their Motion for Summary Judgment. For the reasons set forth herein and in Defendants' principal and opposition memoranda, Defendants are entitled to summary judgment because the benefits decision was reasonable and rationally supported and, regardless, there is no legal or factual basis to hold SSM liable for the decision.

## LEGAL ARGUMENT

### I. UNUM IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ITS DECISION WAS REASONABLE AND RATIONALLY SUPPORTED.

Plaintiff's opposition to Defendants' summary judgment motion fails because it is flawed in three critical respects: (1) it misstates and misapplies the holding in Weitzenkamp; (2) it applies a non-deferential framework to Unum's decision in contravention of the applicable abuse-of-discretion standard; and (3) it ignores substantial evidence supporting Unum's application of the self-reported symptoms and mental illness

1

limitations. When Unum's benefits decision is properly viewed in the context of the actual holding in Weitzenkamp, the evidence in the record, and the abuse-of-discretion standard, it must be upheld and summary judgment granted in Defendants' favor.

### A. The Self-Reported Symptom Limitation is Enforceable in this Case Pursuant to Weitzenkamp.

Plaintiff argues that her diagnoses of exclusion based on (1) the failure of verifiable tests to objectively identify any other diagnosis and (2) Plaintiff's self-reported history and symptoms is not subject to the self-reported symptom limitation under Weitzenkamp v. Unum Life Ins. Co., 661 F.3d 323 (7th Cir. 2011). See Docket No. 20, p. 7. Such an expansive reading and interpretation would effectively render the self-reported symptom limitation wholly unenforceable in every case, which is contrary to the actual holding in Weitzenkamp. Specifically, the Court in Weitzenkamp distinguished between a diagnosis based "primarily" on self-reported symptoms, which is subject to the self-reported symptom limitation, and a diagnosis based on "objective medical evidence," which is not. Id. at 331 ("The remaining question is whether the diagnosis of disabling fibromyalgia in the present case was based primarily on Weitzenkamp's self-reported symptoms or on objective medical evidence…Because the disabling illness in this case, fibromyalgia, is not primarily based on self-reported symptoms, but rather can be based on the verifiable evidence of its manifestations, the self-reported symptoms limitation does not apply in this case.").

Plaintiff simply cannot avoid that her diagnoses of chronic migraine and new persistent daily headaches "are primarily made by history and physical ruling out other

2

1650249.1

conditions. Imaging procedures such a MRI and CT can rule out other types of headaches. The 2 types of headaches noted above are generally considered diagnoses of exclusion. She had MRI, MRA of brain and CT scan of brain. No other causes of her headaches were diagnosed." 003064-003065; (Defs. PFOF 67) (emphasis added). Stated differently, Plaintiff's treating physician who made the diagnoses undisputedly relied on her description of the frequency, duration, and intensity of the headaches (a symptom manifestation specifically identified in the policy definition of "self-reported symptoms") and the fact that "objective medical evidence" ruled out other diagnoses (as opposed to affirmatively identifying her diagnoses). 000626 (Defs. PFOF 7); 0003064 (Defs. PFOF 67) (Diagnostic criteria for "new daily persistent headache" is "distinct and clearly-remembered onset, with pain becoming continuous and unremitting within 24 hr…Present for > 3 months…Not better accounted for by another ICHD-3 diagnosis.").

Thus, Plaintiff's attempt to analogize her diagnosis with the fibromyalgia diagnosis in <u>Weitzenkamp</u> is unavailing. Unlike the trigger-point test, which is a "clinical examination standardly accepted in the practice of medicine," to diagnosis fibromyalgia, Plaintiff's treating physician could not and did not identify any "testing and analysis" utilized to affirmatively establish Plaintiff's diagnoses.[1]  <u>Id.</u> at 331; 003064 ("Please

---

[1]   Plaintiff's attempt to characterize her reporting of symptoms such as "tenderness," "reduced sensation," and "tingling/fatigue" as offering objective medical evidence of her diagnoses ignores two material facts: (1) there is nothing in the record that the physical examinations during which these symptoms were reported "qualifie[d] as a clinical examination standardly accepted in the practice of medicine," <u>Weitzenkamp</u>, 661 F.3d at 331; and (2) there is nothing in the record that links these reported symptoms to Plaintiff's ultimate diagnoses.  <u>See</u> Plf. Opp. Br. [Docket No. 20], at p. 2 ("Floerke's Abnormal Test Results").

3

describe the testing and analysis required to reach the diagnoses described above, or any other condition to have diagnosed Ms. Floerke."). Rather, it was the absence of such testing and analysis that resulted in the particular diagnoses. 003064 (Defs. PFOF 67). A truly analogous situation is if a patient reporting pain throughout his or her body is given the trigger point test but does not have the requisite number of tender points and therefore is given an a diagnosis based on self-reported pain and the exclusion of fibromyalgia as a potential diagnosis. These are precisely the type of situations that Weitzenkamp held remain subject to the self-reported symptom limitation.

### B. Conflicting Evidence Does Not Render Unum's Application of the Self-Reported Symptoms Limitation an Abuse of Discretion.

While Plaintiff acknowledges that Unum's benefits decision is subject to review under the abuse-of-discretion, her opposition brief seeks to apply a less deferential standard of review. Specifically, Plaintiff attempts to point to purportedly "conflicting evidence" to suggest that Unum's decision to apply the self-reported symptoms limitation was arbitrary and capricious. Under the abuse-of-discretion standard, however, the presence of conflicting evidence is insufficient to overturn Unum's decision. See Jones v. WEA Ins. Corp., 60 F.Supp.3d 1000, 1002 (W.D. Wis. 2014) ("Under the applicable deferential standard, the court agrees that WEA's decision to deny Jones benefits was based on a substantial review and, at worst, conflicting evidence. Her challenge, therefore, is unavailing and so the court will grant the motion for summary judgment.").

As a threshold matter, what Plaintiffs cites as "contrary lines of evidence" are notations early in Plaintiff's medical records that were never expounded upon nor linked to

4

her ultimate diagnoses. For example, Plaintiff asserts that she experienced "abnormally high opening pressures" and was diagnosed with "high pressure syndrome" while being treated at MHNI in 2014. Plf. Opp. Br. [Docket No. 20], p. 8; PAPFOF 5, 9. Plaintiff also identifies an MHNI notation that her headaches had a "strong cervicogenic component." PAPFOF 3. In her discharge report from MHNI, however, there was no mention of the noted pressure or cervicogenic issues, much less that these observations were linked to or caused her headaches. 000134. Rather, the final assessment was "[o]besity and the inflammatory response to obesity indicated by the sed rate elevation may be important. <u>No other markers are available that would indicate a secondary cause of headache at this time</u>." 000134 (Defs. PFOF 27) (emphasis added).

Dr. Bain, the treating physician who submitted the Attending Physician Statement in 2016 and the report on appeal of the benefits decision, did not identify high pressure or cervicogenic issues as evidence supporting his diagnoses of chronic migraine and new daily persistent headaches. 000590-000592 (Defs. PFOF 52); 003064-003065 (Defs. PFOF 67). To the contrary, when specifically asked to "describe the testing and analysis required to reach the diagnoses above," Dr. Bain stated as follows: "[t]he diagnoses of chronic migraine and new persistent daily headache are primarily made by history and physical ruling out of other conditions. Imaging procedures such as MRI and CT scan can rule out other types of headaches. The 2 types of headaches noted above are generally considered diagnoses of exclusion. She has had MRI, MRA of brain and CT scan of brain. <u>No other causes of her headaches were identified</u>." 003065 (Defs. FOF 67) (emphasis added). Further, Dr. Bain noted that headaches caused by fluid pressure would have been

5

assigned a different diagnosis and ruled out in reaching the new daily persistent headache diagnosis. 003064. Similarly, Dr. Faull, a pain specialist who treated Plaintiff in December 2015, did not identify pressure or cervicogenic issues, and expressly noted: "On exam I cannot find a cervicogenic component as she really has only minimal tenderness in the left upper cervical region[.]" 000714 (Defs. PFOF 46).

That Plaintiff's own treating physicians did not find these earlier "lines of evidence" significant nor connect them to her ultimate diagnoses undermines her attempt to discredit Unum's clinical consultants. See Plf. Opp. Br. [Docket No. 20], p. 9 ("Neither of Unum's own reviewing providers—Nurse Israel nor Nurse Ellington—addressed or distinguished the lumbar puncture findings, the diagnosis of high pressure syndrome, or Floerke's family provider's opinion that her headaches were connected to these findings."[2]). The record is clear that Unum's clinical consultants extensively reviewed the medical records, including the MHNI records regarding the lumbar punctures and potential cervicogenic component, but ultimately concluded that the diagnostic studies, consultations, and procedures detailed in the medical records did not identify an "etiology" for the diagnoses. 000743-00746 (Defs. PFOF 57); 003078-003084 (Defs. PFOF 71-72). While Plaintiff argues that the clinical consultants' use of "etiology" does not track the language of Weitzenkamp, the import of their conclusions is entirely consistent with that decision and the information

---

[2] Plaintiff's characterization that her family physician offered an opinion that her headaches were linked to high pressure is unsupported. The medical record cited merely indicates that Plaintiff is reporting to the family physician that "it is felt that it [her headaches] is related to increased pressure of her spinal fluid." 000729; PAFOF 16.

6

1650249.1

provided by her treating physicians; namely, the diagnoses were not based on "objective medical evidence." Cf. Plf. Opp. Br. [Docket No. 20], p. 12.

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as to Unum's application of the self-reported symptoms limitation. As set forth herein and in Unum's principal brief, the benefits decision was reasonable and rationally supported by the record (and consistent with Weitzenkamp) and should be upheld. Under the abuse-of-discretion standard, this result is not changed simply because Plaintiff identifies from the extensive record potentially "conflicting evidence." This is particularly true where, as here, she failed to demonstrate that evidence was linked or connected to her ultimate diagnoses.

### C. Unum's Application of the Mental Illness Limitation was Reasonable and Rationally Supported.

The crux of Plaintiff's opposition to Unum's application of the mental illness limitation as an additional basis upon which to discontinue benefits is that "there is no evidence that if Floerke's mental health impairments immediately resolved, that she would cease to be disabled." Plf. Opp. Br., p. 10. The problem with this argument is that the converse is true—there is also no evidence that if Plaintiff's headaches resolved she would no longer be disabled—and Plaintiff (not Unum) bears the burden of proving eligibility for benefits. Jones, 60 F.Supp.3d at 1013 ("[I]t is not WEA's burden to prove Jones was *ineligible* for benefits; it is Jones's burden to prove she was *eligible* for benefits.") (emphasis in original). Stated differently, Plaintiff failed to demonstrate that her disability was not due to mental illnesses existing independently of her headaches.

7

In contrast, the record is replete with evidence that Plaintiff's depression, anxiety and related mental health conditions were functionally impairing. Since 2014, Dr. Bain has identified Plaintiff as functionally impaired by depression and noted that "[a]ctivities of daily living extremely difficult because of psychological symptoms." He further identified her depression and anxiety as "significant" co-morbidities. 00342-00344 (Defs. PFOF 32-33). In his 2016 Attending Physician Statement, Dr. Bain identified Plaintiff's anxiety as a diagnosis that impacted her "functional capacity" and indicated that "depression and anxiety are significant comorbid conditions" resulting in behavioral limitations and restrictions. 000591-000592 (Defs. PFOF 52-53).

Similarly, in December 2015, Dr. Faull noted "coexisting" conditions of depression and anxiety. 00713 (Defs. PFOF 43-45). He assessed Plaintiff as having "moderately severe level of functional impairment secondary to depression" and only a "[m]oderate disability related to pain." 000713 (Defs. PFOF 44). Accordingly, he referred Plaintiff to "pain psychology for cognitive behavior therapy." 000714 (Defs. PFOF 47). Consistent with Dr. Faull's assessment, Plaintiff's therapist, Peter Laubach, diagnosed her with "Major Depressive Disorder, moderate to serious intensity and with anxious features" in January 2016. 000644 (Defs. PFOF 48-49). Laubach identified Plaintiff's current symptoms of depression as including "poor energy levels, diminished motivation, periods of hopelessness, fearfulness, anhedonia, suicidal ideation with plan, irritability and hypertension." 000645 (Defs. PFOF 505). He noted that "these symptoms have made it more difficult to undergo treatment for her chronic migraine disorder." 000645 (Defs.

8

PFOF 50). Laubach also diagnosed Plaintiff with Post-Traumatic Stress Disorder that exacerbated her anxiety. 000645 (Defs. PFOF 51).

While Plaintiff cites to her claim for Social Security Disability Income ("SSDI") benefits to downplay the impairment caused by her mental illnesses, the SSDI file only served to support Unum's application of the mental illness limitation. Cf. Plf. Opp. Br. [Docket No. 20], p. 10. Plaintiff filed for SSDI benefits on the basis of both Headache/Migraine without Aura and Major Depressive Affective Disorder. 001436-001437 (Defs. Response to PAPFOF 19). Plaintiff's reliance on the opinion of Dr. Steven G. Benish, the Social Security Administration's ("SSA") consultative examiner, that her barriers to employment were medical and not mental is misplaced. Cf. Plf. Opp. Br. [Docket No. 20], p. 10. In the Disability Determination Explanation, the SSA ultimately rejected Dr. Benish's opinion that Plaintiff's impairment was primarily medical, determining instead that Plaintiff "has marked limitation in daily activities and in concentration, persistence and pace <u>caused by her combination of mental impairments and by her intractable headaches</u>." 001441 (Defs. Response to PAPFOF 19) (emphasis added). The SSA further noted that:

> The combined effect of the depression, anxiety and headache disorder is equal in severity to listing 12.04A1B13. The claimant has vegetative signs of depression, meeting the A criteria of that listing. Her ADLs are markedly limited as described in the PRT summary, and her concentration, persistence, and pace are markedly limited as well. These limitations are caused by the combined effects of her headaches and her mental impairments, and it is impossible to determine the impact of each impairment separately. The claimant is found to be disabled based on the combined effects of her physical and mental impairments.

9

001442 (Defs. Response to PAPFOF 19). The SSA determined that Plaintiff's "Affective Disorders" [depression, anxiety-related disorders] were "primary" and "severe," with Migraine being "secondary" and "severe," and her Anxiety and Personality Disorders were also labeled as "severe." 001442 (Defs. Response to PAPFOF 19).

For the reasons set forth above and in Defendants' other memoranda, Unum's decision to discontinue benefits under the mental illness limitation was well-supported in the record and does not constitute an abuse-of-discretion. Accordingly, Unum's decision should also be upheld on this basis and summary judgment granted in Defendants' favor.

**D. Remand is the Appropriate Remedy if Unum's Decision is Deemed an Abuse of Discretion.**

Plaintiff argues that if Unum's benefits decision is not upheld, she is entitled to reinstatement of benefits, despite that the disability definition changed from "regular occupation" to "any gainful occupation" on October 25, 2016. Plf. Opp. Br., p. 12-13. This argument fails as a matter of law.

As set forth in Defendants' principal memorandum, the appropriate remedy in the context of a reversed benefits decision made prior to a change in disability definition is remand to the administrator to consider the new definition in the first instance. Pakovich v. Broadspire Servs., 535 F.3d 601, 604-606 (7th Cir. 2008). The Pakovich court offered the following rationale for this approach:

> Broadspire argues that the rule contemplated by Pakovich is unworkable, since it would require plans denying benefits under an 'own occupation' standard to also expend their resources evaluating participants under the 'any occupation' standard, solely in anticipation of a possible reversal on the

10

> 'own occupation' issue on appeal. According to Broadspire, such a rule would inappropriately require it to make a determination that had not yet ripened for consideration, since the rule would mandate that plans make determinations under the 'any occupation' standard prior to the standard first being triggered by 24 months of disability under the 'own occupation' standard. We agree with Broadspire that it is unnecessary for plans to hedge their bets on a possible reversal on appeal by requiring that, after a plan has already found that an employee does not qualify for disability benefits under the 'own occupation' standard, it must also determine whether the employee is disabled from 'any occupation.' Requiring this further analysis would be impractical and redundant…Here, [ ] <u>the 'any occupation' issue did not ripen into an 'apple' ready to be bitten until the district court rendered a disability determination under the 'own occupation' standard</u>. Thus, not only had the Plan's review board failed to address the issue, <u>but the issue was never properly before the Plan Administrator</u>…Here, the Plan Administrator did not issue any decision on Pakovich's eligibility for disability benefits under the 'any occupation' standard, which like the former example above, left the district court with nothing to review. We therefore adopt the first part of the Eighth Circuit's rule for this Court, holding that <u>when the plan administrator has not issued a decision on a claim for benefits that is now before the courts, the matter must be sent back to the plan administrator to address the issue in the first instance.</u>

<u>Id.</u> at 605-608 (citations omitted; emphasis added).

Further, the <u>Pakovich</u> court rejected the same argument raised by Plaintiff that reinstatement of benefits properly restored the "status quo." <u>Id.</u> at n.3. Specifically, the Court reasoned: "the status quo, prior to Broadspire's termination of Pakovich's benefits, was only her receipt of 24 months' disability under the 'own occupation' standard. Furthermore, reinstatement would undermine our decision that the Plan Administrator must have the first opportunity to decide the 'any occupation' issue, since 'in essence…awarding retroactive benefits…would amount to the district court deciding that

11

Pakovich was disabled, thus substituting its own judgment for that of the Plan Administrator, when that was inappropriate in this case.'" Id. (citations and quotations omitted).

Here, Plaintiff began receiving benefits under the "regular occupation" standard on October 24, 2014, and continued to receive benefits until June 1, 2016, when they were discontinued under the self-reported symptoms and mental illness limitations. Because payments stopped on June 1, 2016, Unum did not consider the "any gainful occupation" standard that was triggered on October 25, 2016 (after 24 months of benefits). Thus, if the Court determines that there was an abuse of discretion in Unum's decision to invoke the 12-month limitation on self-reported symptoms and mental illness, Pakovich instructs that the appropriate remedy is remand for Unum to consider the "any gainful occupation" standard in the first instance.

## II.     SSM IS ENTITLED TO SUMMARY JUDGMENT.

Relying wholly on Larson v. United Healthcare Ins. Co., 723 F.3d 905 (7th Cir. 2013), Plaintiff argues that SSM is a necessary party that is "liable to Floerke for unpaid benefits." Plf. Opp. Br., [Docket No. 20], p. 14. Plaintiff's reliance on Larson is misplaced, as is her interpretation of its holding. The issue in Larson was whether an insurance company is a proper defendant in a claim for benefits due under § 1132(a)(1)(B), which the Court answered in the affirmative. The issue presented here, however, is whether the plan is a proper defendant when the only claim is for benefits due under § 1132(a)(1)(B) and the benefits plan is "implemented by insurance and the insurance company decides contractual eligibility and benefits questions and pay the claims."

Larson, 723 F.3d at 913.

While the Larson court was not faced with this precise issue, its holding dictates the result. Specifically, the Court held:

> By necessary implication, however, a cause of action for 'benefits due' <u>must be brought against the party having the obligation to pay</u>. In other words, the *obligor* is the proper defendant on an ERISA claim to recover plan benefits. Typically, the plan owes the benefits and is the right defendant. But not always…When an employee-benefits plan is implemented by insurance and the insurance company decides contractual eligibility and benefits questions and pay the claims, <u>an action against the insurer for benefits due 'is precisely the civil action authorized by § 1132(a)(1)(B).'</u>

Id. (italicized emphasis in original; underlined emphasis added; citations omitted).

Based on this holding, courts in this jurisdiction have granted summary judgment in favor of the plan where, as here, it is undisputed that the benefits sought under § 1132(a)(1)(B) are payable under an insurance policy, the insurance company made the decision to deny benefits, and is obligated to pay benefits. See Complaint [Docket No. 1] at ¶¶ 9-13; Plf. Opp. Br. [Docket No. 20] at p. 5 (Unum "serves a dual function—'both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due.'"). For example, in Carson v. Am. Quality Schs. Corp. Thea Bowman Leadership Academy, 2017 U.S. Dist. LEXIS 74803 (N.D. Ind. May 17, 2017), the court applied Larson to grant summary judgment in favor of the plan based on the following rationale:

> To the extent that one of Shawn's state law claims is construed as a claim for benefits under ERISA, AQSC seeks summary judgment because Shawn does not dispute that United of Omaha, not AQSC, made the decision to deny benefits. The

13

> Seventh Circuit has clearly stated what seems intuitively obvious: 'a cause of action for 'benefits due' must be brought against the party having the obligation to pay.' And in the case of an ERISA life insurance plan like the one involved here, where the 'employee-benefits plan is implemented by insurance and the insurance company decides contractual eligibility and benefits questions and pays the claims, an action against the insurer for benefits due 'is precisely the civil action authorized by § 1132(a)(1)(B).' <u>Shawn does not dispute that United of Omaha was the decisionmaker and potential payor of the life insurance claim. As a matter of law then, Shawn has no claim for benefits under § 1132(a)(1)(B) against AQSC, which is entitled to summary judgment on Count I, construed as such a claim</u>.

<u>Id.</u> at *15-16 (citations omitted; emphasis added) (quoting <u>Larson</u>).

Based on the foregoing, SSM is not a proper defendant because it was not responsible for deciding the claim for benefits nor obligated to pay benefits under the policy for a successful claim. Plaintiff has effectively conceded same in her submissions and has not asserted any evidence to the contrary. Accordingly, SSM is entitled to summary judgment and should be dismissed.

## **CONCLUSION**

For the reasons set forth herein, in Defendants' principal memorandum, and in Defendants' memorandum in opposition to Plaintiff's cross-motion for summary judgment, Unum's benefits decision was both reasonable and rationally support; thus, it should be upheld and summary judgment granted in Defendants' favor. Regardless, Plaintiff has no basis to hold SSM liable for the benefits decision and therefore it is entitled to summary judgment even if the benefits decision is not upheld.

**MESSERLI | KRAMER**

Dated: June 1, 2018

*s/Terrance J. Wagener*
Terrance J. Wagener
100 South Fifth Street, Suite 1400
Minneapolis, MN 55402
Telephone: (612) 672-3600
twagener@messerlikramer.com

**ATTORNEYS FOR DEFENDANTS**

15

1650249.1